IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

OLYMPIC INVESTMENTS, INC.,
As Successor in Interest to
Viper Boats, Inc.                                    PLAINTIFF

        v.              Civ. No. 06-2165

FRANK BURNETT, DENNIS JOSLIN
2000, INC., (a/k/a DENNIS
JOSLIN COMPANY 2000, INC.),
GARVIN, AGEE, CARLTON &
MASHBURN, L.L.P., ALAN AGEE
and JOHN MASHBURN                                    DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff Olympic Investments, Inc. ("Olympic"), an Arkansas corporation, brings suit on behalf of its subsidiary, Viper Boats, Inc. ("Viper"), a former Arkansas corporation whose charter was revoked December 31, 2004, alleging negligence, breach of fiduciary duties, fraud, contractual interference and conversion. The suit is the result of the substitution of Defendants Frank Burnett and Dennis Joslin 2000, Inc. ("Joslin") for Viper as plaintiffs in litigation, which, after the substitution, resulted in a $3,000,000 settlement. Defendant attorneys, Garvin, Agee, Carlton & Mashburn, L.L.P., Alan Agee and John Mashburn, prosecuted the lawsuit and effected the substitution.

Defendant attorneys now file a motion for summary judgment (Doc. 39), arguing, *inter alia*, that Viper is the true party in interest to the present lawsuit and that Olympic

cannot, as a holding company or shareholder, assert Viper's interests against Defendants.  Accordingly, and for reasons reflected below, the Court finds that Defendants' motion should be and hereby is GRANTED.  As the Plaintiff is not the true party in interest to the present action, Plaintiff's claims are DISMISSED WITH PREJUDICE as to each Defendant.

## I.  Background

On October 23, 2000, Viper, a manufacturer of fiberglass boats, represented by the Everett Law Firm of Fayetteville, Arkansas, filed a complaint in the Circuit Court of Baxter County, Arkansas against Viper's supplier, Neste Polyester, Inc. (the "*Neste* suit"), which sought damages for Viper's use of a defective clear-coat and finishing agent provided by Neste.  On July 24, 2001, Viper assigned its interest in the *Neste* suit to Defendant Burnett, a Viper shareholder and board member, and Dennis Joslin 2000, Inc. ("Joslin").[1]

The parties dispute the nature and effect of the assignment.  Defendant attorneys contend that the assignment was absolute and offer evidence in the form of a resolution of the Viper board of directors, dated June 5, 2001, signed by Viper President and Chairmen Charles Luna, adopted at a

---

[1]

Dennis Joslin is apparently an associate of Defendant Burnett. Plaintiff contends that Burnett holds ownership in Dennis Joslin 2000, Inc. and that such interest created a conflict of interest.  (Doc. 2 ¶ 44.)

special board meeting attended by each board member.  The
resolution states:

> Upon motion duly made, seconded, and unanimously
> approved, the following Resolution was adopted:
> RESOLVED, that the Corporation shall execute an
> Absolute Assignment with Frank Burnett, assigning,
> quitclaiming, and conveying the chose in action,
> i.e., the Corporation's lawsuit against Neste. The
> President and Secretary are authorized to execute any
> and all documents necessary to complete the
> transaction."

(Def. Ex. 4)  Defendants also offer the instrument effecting the
assignment, dated July 24, 2001, which identifies both Defendant
Burnett and Defendant Joslin as assignees and states that Viper
"does hereby grant, bargain, sell, transfer and convey to the
[assignees] all of the Assignor's right, title and interest in
[the *Neste* suit]."  (Def. Ex. 5)  While Plaintiff contends in
its complaint that Defendants Burnett and Joslin were only
assigned a one-third interest in the litigation, (Doc. 2 ¶
4.), Plaintiff admits in its response to Defendants' motion
that the assignment was absolute.  (Doc. 44 ¶ 5.)  However,
Plaintiff contends that the documentary evidence of the
assignment "does not disclose the entire story," (Doc. 44 ¶
6.), and that "a separate agreement concerning the assignment
was made" by Luna, Burnett and Joslin.  (Doc. 44 ¶ 5.)
Plaintiff cites the deposition of Luna where he states,
"Burnett requested, as a member of the Board of Directors,
that the Neste claim be assigned to him as a business
arrangement and he agreed at that point that he would share

AO72A
(Rev. 8/82)

the proceeds in equal shares with Joe Kalla and myself."
(Luna Depo. ¶ 8.)  Plaintiff contends that Defendants Burnett
and Joslin offered to pay a certain hourly fee to the Everett
Law Firm in exchange for an assignment of a one-third interest
in any settlement or recovery resulting from the *Neste* suit.
(Doc. 2 ¶ 4; Doc. 44 ¶ 6.)

Subsequent to the assignment, the *Neste* suit was
transferred to the Circuit Court of Sebastian County, and the
Everett Law Firm advised that it would no longer be able to
represent Viper.  At that time, representation by Defendant
attorneys, Garvin, Agee, Carlton & Mashburn, L.L.P., an
Oklahoma law firm, Allen Agee and John Mashburn, was obtained
for the *Neste* suit on a contingent fee basis.[2]  While it
appears Defendant Burnett arranged for the representation,
Viper and Joslin are listed as the clients, and only Luna's
signature appears on the document.[3]  Plaintiff alleges that as

---

[2]

The Contingency Fee Agreement is provided by Defendants as
Exhibit 6.

[3]

Plaintiff contends Defendant attorneys were selected by Luna
at the urging of Defendant Burnett.  (Doc. 2 ¶ 7.)  Plaintiff
seems to suggest impropriety in stating that Plaintiff "verily
believes that defendant Burnett and defendant Dennis Joslin
2000, Inc. were former clients of defendants John Mashburn and
Alan Agee and Garvin, Agee, Carlton & Mashburn, L.L.P."  (Doc.
2 ¶ 9.)

Defendant attorneys contend that Defendant Burnett arranged
for Defendant attorneys to prosecute the *Neste* suit at no
expense to Viper in satisfaction of his obligation under the

a result of the withdrawal of the Everett Law Firm and the termination of Defendant Burnett's alleged obligation to make payments to the Firm, the assignment to Defendants Burnett and Joslin of Viper's interest in the *Neste* suit became null and void.  (Doc. 2 ¶ 8.)   Defendant attorneys point to the absolute and unconditional nature of the assignment as documented and contend "[t]here is no record of any act to rescind or cancel the assignment" and "[t]here is also no record impugning the validity of the assignment or records indicating the assignment was no longer in effect."  (Doc. 41 p. 6.)  At the time of the assignment, no change was made in the Sebastian County Circuit Court suit to reflect the interests of Defendants Burnett and Joslin in the suit.

On March 1, 2002, Defendant Burnett, Viper shareholder Joe Kalla and various business entities operated by Kalla entered into a Contribution Agreement (Ex. B) under which ownership of Viper was transferred to Olympic,[4] making Olympic

---

assignment agreement to "reasonably prosecute the claims . . . at Assignees' sole expense."  (Ex. 5 p. 1; Doc. 49 p. 7-8.)

[4]

The Agreement accounted for 98% of Viper shares, which had been held by Defendant Burnett and Kalla.  Charles Luna held the remaining 2%.

Subsequent to that Agreement, Olympic was purchased by Larry D. Brehm and Larry D. Nelson pursuant to a May 21, 2002 contract (Ex. C).  Plaintiff alleges that Brehm and Nelson later defaulted on that contract, and Defendant Burnett, Kalla, and Kara Clayton assumed control of Olympic as a three-member board.  (Ex. 8)

AO72A
(Rev. 8/82)

the holding company of and parent company to Viper.

On January 7, 2004, and prior to trial in the *Neste* suit,
the Sebastian County Circuit Court entered an Order
Substituting Real Party in Interest (Ex. 12.), substituting
Defendants Burnett and Joslin for Viper as plaintiffs in the
*Neste* suit. Plaintiff alleges that the assignment was
effected by Defendant attorneys without the approval of or
notice to Viper "arguably relying on an alleged assignment
that was dated approximately two years before [Defendant
attorneys] agreed to represent . . . [Viper]." (Doc. 2 ¶ 10.)
Defendants contend that, following the resignation of Charles
Luna as Viper President on May 22, 2002, Edward White was
elected Secretary of Viper on September 24, 2003,[5] and, upon
assuming that position, White discovered the assignment in
Viper's corporate records and obtained the approval of each
Viper shareholder to change the styling of the *Neste* suit to
identify Defendants Burnett and Joslin as plaintiffs.[6] (Doc.
40 ¶ 13.) Thus, Defendant attorneys contend they filed a
Motion to Substitute Real Parties in Interest (Def. Ex. 11) in
accordance with White's direction and after inquiry into the

[5]
Also at that time, Joe Kalla was elected President of Viper.
[6]
White claims that he made the change in order to be in
compliance with procedural rules that require cases to be
brought by the true parties in interest. (Doc. 40 ¶ 16; White
Depo. Ex. 9 p. 12.)

AO72A
(Rev. 8/82)

matter.  (Doc. 40 p. 17-18.)  Defendants provide evidence in
the form of a December 11, 2003 facsimile communication from
White to Defendant Mashburn, stating:

> As you requested this hour. Attached is a copy of
> the Minutes of the Special Meeting of the Board of
> Directors of Viper Boats Inc. in which the lawsuit
> against Neste was authorized to be assigned to
> Frank.  The records that would contain the Absolute
> Assignment to Frank are in the hands of the
> attorney who prepared these minutes, who has
> refused to provide them to me since June.

(Def. Ex. 11.)

Following the substitution, the *Neste* suit proceeded to
trial with Defendants Burnett and Joslin listed as plaintiffs
and Defendant attorneys prosecuting the case pursuant to their
contingent fee arrangement.  A judgment was entered in the
amount of $2,500,000.  However, Neste paid $3,000,000 in
settlement following an unsuccessful appeal.  Defendant
attorneys secured $1,000,000 in attorneys' fees from the
settlement,[7] and filed an interpleader action in the Circuit

---

[7]

The trial court awarded attorneys fees in the amount of
$125,530.84.  Defendant attorneys secured the $1,000,000 fee
pursuant to their contingent fee agreement.  Plaintiff, while
contending that Viper is entitled to the *Neste* judgment,
argues that Defendant attorneys representation agreement was
not valid because it was not entered into with Defendants
Burnett and Joslin, who were plaintiffs in the suit at the
time the judgment was entered.  (Doc. 46 p. 4.)  Thus,
Plaintiff contends Defendant attorneys are only entitled to
the awarded attorneys fees.

Defendant attorneys contend that a client's successor in
interest is bound by a contingent fee agreement with an

AO72A
(Rev. 8/82)

Court of Garvin County, Oklahoma to dispense the remaining $2,000,000.[8]

Plaintiff alleges that Defendant attorneys acted negligently and in breach of fiduciary duties owed to their client, Viper, in effecting the substitution of Viper with Defendants Burnett and Joslin in the *Neste* suit.[9] Plaintiff alleges Defendants Burnett and Joslin committed fraud on the Court, Viper and Olympic by purporting to have a valid assignment of the *Neste* suit despite personal knowledge to the contrary,[10] interference with the legal services contract between Viper and Defendant Garvin, Agee, Carlton & Mashburn,

---

attorney. (Doc. 49 p. 8.)

[8]

Apparently, the interpleader funds were subsequently transferred to the Sebastian County Circuit Court.

[9]

Specifically, Plaintiff contends Defendant attorneys "knew or should have known that a purported assignment to Defendants Frank Burnett and Dennis Joslin Company, 2000, Inc. dated several years prior to [Defendant attorneys] entering into a written contract with [Viper] was suspect, and by reasonable inquiry could have determined that said assignment was void, null and of no effect," (Doc. 2 ¶ 19.), and that Luna informed Defendant attorneys upon appearing to testify at trial in the *Neste* suit that Defendants Burnett and Joslin were not the proper parties in interest to the *Neste* suit. (Doc. 2 ¶ 20.)

[10]

Plaintiff points to a May 21, 2002 contract (Ex. C) pursuant to which Olympic was purchased by Larry D. Brehm and Larry D. Nelson. Defendant Burnett is party to that contract, which describes Viper's intended allocation of any judgment resulting from the *Neste* suit and thus acknowledges Viper's interest in the suit. (Doc. 45 ¶ 9.)

L.L.P., and conversion of the *Neste* suit.  Plaintiff alleges
Defendant Burnett violated fiduciary duties to Viper and
Olympic as a stockholder and board member in those
corporations by interposing himself in the *Neste* suit.[11]
Plaintiff alleges that it has suffered, as a successor in
interest to Viper, damages in the amount of $3,000,000,
representing the *Neste* suit settlement, and is entitled to
recover that amount along with interest on the judgment and
attorneys' fees.

### II.  Standard of review

A motion for summary judgment will be granted when "there
is no genuine issue as to any material fact and . . . the
moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A "material" fact is one "that might
affect the outcome of the suit under the governing law . . .
."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[11]

Plaintiff offers as its Exhibit H an unsigned document
entitled "Minutes of Directors' Meeting" representing an
alleged meeting on June 20, 2006 involving Defendant Burnett
and Clayton, as a two-thirds quorum of the Olympic board, at
which it was determined that Kalla would be removed as
president, that Burnett would be elected president and that
"Burnett, as President of the corporation, shall direct and
manage" the present suit in which Burnett is a defendant.
(Ex. H)

In addition, Plaintiff offers a notarized document, signed by
Kara Clayton, entitled "General Release," in which Clayton
professes to settle all claims between Defendant Burnett,
Viper and Olympic.  (Ex. F)

AO72A
(Rev. 8/82)

A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 248.  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256-57 (citing Fed. R. Civ. P. 56(e)).  In order to withstand a motion for summary judgment, plaintiffs must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913 (1993).  A mere scintilla of evidence is insufficient to avoid summary judgment*. Moody v. St. Charles County,* 23 F.3d 1410,

AO72A
(Rev. 8/82)

1412 (8th Cir. 1994).

**III.  Discussion**

The Court finds no genuine issue of material fact to preclude it from finding Plaintiff has no standing to bring the present action.  The record reflects a parent-subsidiary relationship between Plaintiff Olympic and Viper.  Parent corporations are separate entities from their subsidiaries and as such are unable to assert the interests of their subsidiaries.  *See Schenley Distillers Corp. v. U.S.*, 326 U.S. 432, 435 (1946).  In *Schenley*, a parent corporation sought to challenge the denial of a permit application filed by its subsidiary with the Interstate Commerce Commission.  *Id.* at 433-34.  The *Schenley* Court found:

> [The district court] dismissed the suit as to the parent corporation on the ground that it had no legal interest sufficient to entitle it to maintain suit.  The court held that the commission properly ruled that the applicant was a 'contract carrier', and accordingly dismissed the complaint.

> The district Court rightly held that the parent corporation had no standing to sue.  It did not ask that a permit be issued to it, and its sole interest in the permit sought for its co-appellant was that of a stockholder . . . .  We conclude that the character of a stockholder's interest in this regard is not so altered by the mere facts that it owns all the stock of the corporation against which the commission's order is entered and that the parent manages and controls its subsidiary, as to give the stockholder standing to sue to set aside the commission's order.

Page 11 of  15

*Id.* at 435.   Like the parent corporation in *Schenley*, Plaintiff Olympic, despite its ownership of Viper and possible control over the affairs of Viper, remains an entity distinct from Viper and is therefore unable to assert the interests of Viper.

In *Schenley*, the parent corporation brought suit along with its subsidiary.   Here, Plaintiff Olympic is unable to proceed in such a manner because Viper, its subsidiary, is no longer an existing Arkansas corporation.   Corporations whose charters have been revoked are unable to maintain suits because they are no longer existing entities.   *HRR Arkansas, Inc. v. River City, Contractors, Inc.*, 87 S.W.3d 232, 237 (Ark. 2002).   Instead, Plaintiff Olympic attempts to assert the former interests of Viper as its parent and successor in interest.

A corporate successor in interest is "another corporation which through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first corporation."   BLACK'S LAW DICTIONARY 746 (abridged 5th ed. 1983).   Plaintiff contends that "[e]xamination of the Contribution Agreement . . . along with the Contract between Larry Brehm, Larry Nelson, Frank Burnett, Joe Kalla and Kara Clayton indicates that an amalgamation was occurring whereby Olympic was to become the successor of Viper."   (Doc. 46 p.

AO72A
(Rev. 8/82)

6.)   Defendant attorneys contend that the evidence reflects the creation of a parent-subsidiary relationship between Olympic and Viper, as opposed to a consolidation that would transfer Viper's assets, liabilities and interests to Olympic. The Court finds the record reflects the creation of a parent-subsidiary relationship, and Plaintiff offers no evidence to show that a consolidation occurred or to allow an inference to that effect.   The Contribution Agreement recognizes that the parties intended to "create a parent-subsidiary relationship between Olympic, as parent, and Viper, as subsidiary." (Ex. B p. 1.)   Throughout that document, Viper and Olympic are contemplated separately as two distinct entities.   For instance, the independent and differing ownership structures of those companies are described independently.   The May 21, 2002 contract treats Olympic and Viper separately.   While the corporations share officers, Viper remains a distinct entity.

Defendant attorneys correctly note that Arkansas Code Annotated §§ 4-26-1001, 1009 delineate procedures under which corporations may merge and consolidate.  (Doc. 49 p. 5.)  The record contains no evidence of an intention to merge or an attempt to comply with those procedures to effect a merger, such as satisfaction of notice requirements and necessary recitations of information such as an effective date for a merger.  *See* Ar. Code Ann. § 4-26-1001.  Because Plaintiff

AO72A
(Rev. 8/82)

provides no evidence supporting its contention that it is successor in interest to Viper based on consolidation of Viper into Plaintiff Olympic, Plaintiff is without standing to maintain the present action.   The action is based solely on the interests of Viper; Plaintiff asserts each of its claims as successor in interest to Viper.   While it could be contended that Plaintiff's separate claims against Defendant Burnett for breach of fiduciary duties assert the interests of Olympic as well as Viper, there are no facts supporting the proposition that the conduct of Defendant Burnett directly effected Olympic or related to Olympic in any way, as Olympic was not a party to the *Neste* suit or involved in the affairs at issue beyond its role as holding company of an interested party.   Plaintiff's sole interest in this action is as a shareholder of Viper, and that interest is insufficient to create standing.

### IV.  Conclusion

Based on the foregoing, the Court determines Defendant's Motion for Summary Judgment (Doc. 39) is GRANTED as to Plaintiff's claims against Defendant attorneys.   The Court determines that Plaintiff is without standing to assert the interests of Viper, and Plaintiff is unable to assert such claims against the remaining Defendants Burnett and Joslin.   Accordingly, each of Plaintiff's claims are DISMISSED WITH

AO72A
(Rev. 8/82)

PREJUDICE.

IT IS SO ORDERED this 30th day of November 2007.


/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)